UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
(Camden Vicinage)

**WEISBERG LAW, P.C.**
BY:  Matthew B. Weisberg
7 South Morton Ave.
Morton, PA 19070
(610) 690-0801
Fax (610) 690-0880

| | | |
|---|---|---|
| Jeffrey Bowman and Laurie Bowman | : | |
| 403 New Jersey Road | : | |
| Browns Mills, NJ 08015 | : | |
| Plaintiffs, | : | NO.: |
| | : | |
| v. | : | |
| | : | |
| Wells Fargo Bank, N.A. | : | |
| Wells Fargo Center | : | |
| Sixth Street & Marquette Avenue | : | |
| Minneapolis, MN 55479 | : | |
| | : | |
| And | : | |
| | : | |
| American Bankers Insurance | : | Jury Trial of Twelve (12) Jurors Demanded |
| Company of Florida | : | |
| 11222 Quail Roost Drive | : | |
| Miami, FL 33157-6543 | : | |
| Defendants. | : | |

## CIVIL ACTION COMPLAINT

### I.  Jurisdiction and Venue

1.  This Honorable Court has jurisdiction over Plaintiff's claims based on diversity conferred by 28 U.S.C. § 1332; supplemental jurisdiction over state law claims is granted by 28 U.S.C. § 1367.

### II.  Parties

2.  Plaintiffs, Jeffrey Bowman, and Laurie Bowman are adult individuals and husband and wife, residing at the above-captioned address.

3. Defendant, Wells Fargo North America ("Wells Fargo"), is incorporated under the laws of the state of Minnesota, with its corporate headquarters at the above captioned address.

4. Defendant, American Bankers Ins. Co. of Florida, is incorporated under the laws of the state of Florida, with a corporate headquarters at the above captioned address.

5. At all times material hereto, Defendants were acting individually, within the course and scope of their authority and employment, and/or through their agents, servants, workers, and/or employees, respectively.

6. At all times material hereto, Defendants acted on behalf of each other as agents, servants, workmen, alter ego's, and/or employees thereof.

### III. Operative Facts

7. On or about September 9, 2008, Plaintiffs contacted Wells Fargo towards applying for an unsecured personal line of credit for the purpose of home renovations to accommodate their soon-to-be adopted daughter, Angelina.

8. Plaintiff, Laurie Bowman, had previously been a borrower of Wells Fargo leading her to solicit Wells Fargo for this loan.

9. After communicating with Wells Fargo, Plaintiffs applied for a personal unsecured line of credit and attended a closing at Wells Fargo.

10. Defendant, Jane Doe, broker, believed to be an individual named Mary, coordinated the closing on behalf of Defendant, Wells Fargo.

11. Instead of a personal unsecured line of credit, Mary applied Plaintiff, Laurie Bowman for three loans: (a) an auto finance loan in an amount in excess of $9,000.00; (b) a "cash-on-demand" unsecured line of credit in an amount approximately $8,000.00; and (c) an open-end line of credit in the form of a Wells Fargo credit card in an amount approximately $5,000.00.

12. At all times material hereto, Plaintiff, Laurie Bowman, indicated her intent to be the primary applicant on the aforementioned loans with her husband, Plaintiff, Jeffrey Bowman, to become a co-applicant.

13. At the time of the closing, Plaintiff, Laurie Bowman, purchased credit life insurance through Wells Fargo, from Defendant, American Bankers Insurance Company of Florida.

14. The credit life insurance was to insure, among others, that should Plaintiff, Laurie Bowman, become unemployed, all collection activities, as well as Plaintiff, Laurie Bowman's obligation toward payment thereunder, would freeze during that period of unemployment.

15. The credit life insurance costs approximately $33.00 per loan, which was timely paid.

16. In or around November, 2008, Plaintiff, Laurie Bowman, became unemployed.

17. At the time she became unemployed, Plaintiff, Laurie Bowman, submitted a claim under her credit life insurance protection to Wells Fargo and American Bankers Insurance Company of Florida.

18. At the time she submitted her claim, Plaintiff, Laurie Bowman, discovered: (a) Wells Fargo had switched signing lines between Plaintiffs, Laurie Bowman and Jeffrey Bowman (i.e., Jeffrey was identified as the primary applicant on the three aforementioned loans while Plaintiff, Laurie Bowman, was identified as the co-applicant); and (b) Defendant had approved credit life insurance for two (2) of the three (3) loans (e.g., credit life insurance was available only on the "cash-on-demand" and open-end loans, not the auto finance loan).

19. Because Wells Fargo had improperly identified Plaintiff, Laurie Bowman, as the secondary applicant instead of the primary applicant, Plaintiff was denied credit life insurance.

20. Nonetheless, Plaintiff, Laurie Bowman, was still the primary applicant on one (1) of the three (3) loans leading her to call Wells Fargo in an attempt to change her "position" as to the other loan.

21. Instead of changing the other loan making Plaintiff, Laurie Bowman, the primary applicant for all the loans, Wells Fargo contradictingly changed Plaintiff, Laurie Bowman, to secondary applicant as to both loans.

22. When Plaintiff, Laurie Bowman, contacted American Bankers, credit life insurer advised Plaintiff, Laurie Bowman, that they did not have a copy of the loans but rather only had Defendant's instructions as to primary versus secondary applicants.

23. As a result of Plaintiff, Laurie Bowman, being the secondary applicant on the loans, American Bankers denied Plaintiff's credit life insurance claim vis-à-vis Plaintiff, Laurie Bowman's unemployment.

24. As a result of the denial of the credit life insurance, Defendant bank began collection activities including calling Plaintiffs separately for each loan (three times per collection attempt) totaling on some occasions over 20 times in a three-week period.

25. Defendant Bank also attempted to collect debts from Plaintiff, Laurie Bowman, which were not her debts.

26. Defendants then obtained a judgment against Jeffrey Bowman and then executed upon that judgment by executing on a bank account held by Plaintiff, Laurie Bowman.

## COUNT I
### Fraud Act (CFA)

27. The CFA prescribes, *inter alia*, engaging in any "unfair or deceptive acts and practices" either at, prior to, or subsequent to a consumer transaction.

28.	The actions of Defendants constitute unfair or deceptive acts and practices under the CFA.

29.	The aforementioned acts of Defendants constitute a violation of the CFA.

30.	As a direct and proximate result of the Defendants' aforementioned violation of the CFA, Plaintiffs have suffered great economic loss, as well as humiliation, embarrassment, and emotional distress, damage to their credit rating, future earnings and future lost earning capacity and other damages or losses.

WHEREFORE, Plaintiffs demand judgment in her favor and against Defendants, individually, jointly, and/or severally, in an amount in excess of Seventy-Five Thousand ($75,000) Dollars, together with interest, costs, attorney's fees, treble and statutory damages, equitable, and such other and further relief as this Honorable Court deems just.

WEISBERG LAW, P.C.

/s/ Matthew B. Weisberg
Matthew B. Weisberg, Esquire
Attorney for Plaintiffs